# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00315-CR

**Clifford Bart Dunbar, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
### NO. D-1-DC-12-904010, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Clifford Bart Dunbar guilty of failure to comply with sex offender registration requirements and, with the offense level enhanced by his previous offenses, the jury assessed punishment of life in prison. *See* Tex. Code Crim. Proc. arts. 62.051(h), .055(a). Appellant contends that the evidence was insufficient to show that he possessed the intent to change his residency needed to trigger the reporting requirements. He also contends that he was deprived of his constitutional right to a jury instruction requiring a unanimous verdict of guilty because the charge presented alternative means of committing the offense disjunctively within a general charge. He further asserts that his counsel provided ineffective assistance. We affirm the judgment.

## BACKGROUND

In 1983, appellant was convicted of aggravated rape in Howard County, Texas and indecency with a child in Mitchell County, Texas. He was sentenced to prison terms of fifteen and

thirty years, respectively, for these convictions, to be served consecutively. He was released on parole in 1998 and required to register as a sex offender. He was required to verify his residence every ninety days and to comply with registration requirements governing travel and relocation. He signed a statement that he understood his registration requirements. Appellant registered timely upon his release from prison, verified his address over the following ten years while living in Austin, and changed his address when he moved to Manor in December 2008.

In early 2009, appellant had a small janitorial services company through which he worked as a subcontractor for Kevin Wyrick. On April 9, 2009, Wyrick received complaints that appellant had not cleaned the stores he was assigned. Wyrick unsuccessfully tried to contact appellant, then reported him missing to the Travis County Sheriff's Office. The Travis County registrar for sex offenders tried to contact appellant on his cell phone from April 9-14, but received no reply. A peace officer went to appellant's Manor home on April 14 and did not find him or his car, but did find someone else's vehicle. Appellant's wife stated that he was missing. His parole officer, who had met with appellant on April 6, 2009, attempted to contact him but could not despite a requirement that appellant be at home between 10 a.m. and 1 p.m. The parole officer also left phone messages and visited appellant's Manor home on April 14. She could not make contact then or when she tried again on April 20. Appellant failed to appear at his scheduled parole visit on May 4, 2009. Appellant did not report an intended move or travel.

Appellant was arrested in Michigan on May 8, 2009. United States marshals, responding to a tip, went to an apartment to inquire about appellant's whereabouts. When the marshals drew their weapons and called for appellant to surrender, he attempted to escape by jumping out of a third-floor window. Hampered by a broken back from the fall, appellant

2

was arrested two blocks away. On May 20, 2009, appellant's vehicle was reported to Michigan authorities as abandoned more than thirty miles away from where he had been arrested. The owner of the home where the vehicle was abandoned had the keys to the car and told the Michigan state trooper that the vehicle had been there for at least a month. In the vehicle, there were pillows, notebooks, stacks of papers, a photo, newspapers, and a cup that combined to give Michigan State Trooper Zachary Sparks the impression that someone had been living out of the vehicle. The trooper found no indications that appellant had established a Michigan address such as an apartment lease or utility bill. Appellant never informed Texas authorities he was leaving or Michigan authorities that he was coming and had arrived, nor was there any evidence that he had communicated his travel or relocation intentions to any relevant authorities.

The State of Texas charged appellant with failure to register as a sex offender by failing to report an intended change of address to law enforcement or his parole officer within seven days of the change, failing to provide law enforcement or his parole officer with his anticipated move date and address, failing to report to his supervising officer not less than weekly during the time period in which he had not moved to the intended residence, and failing to provide his supervising officer with his temporary address following his intended move. *See* Tex. Code Crim. Proc. arts. 62.051, .055. The trial court put these theories into a single paragraph in the jury charge and charged them disjunctively, thereby permitting the jury to convict appellant of a single violation if they found he failed to take any of the four required actions. This charge permitted the jury to find a violation even if the jurors did not all agree on which omission occurred. The jury found that appellant had failed to comply with sex offender registration requirements.

3

At the punishment phase, the jury heard evidence that appellant had sexually assaulted a woman in early 2009. In cooperation with law enforcement, this woman called appellant to discuss the assault, as well as her resulting pregnancy, on April 8, 2009—the day before appellant was first reported as having missed work.

## DISCUSSION

**Evidence supports implied finding of intent to move**

Appellant contends that any theory on which he was convicted is undermined by the lack of evidence to support the implied finding that he intended to change addresses. Appellant argues that without an intent to move, he was not required to provide notice of intent to move or the move date and address and that he was not required to report to his parole officer weekly or provide a temporary address pending the move he never intended to make. On that premise, he contends, no reasonable jury could find that he broke the reporting requirements he was charged with violating.[1]

---

[1] The two relevant statutory provisions state as follows:

If a person subject to registration under this chapter does not move to an intended residence by the end of the seventh day after the date on which the person is released or the date on which the person leaves a previous residence, the person shall:

(1) report to the juvenile probation officer, community supervision and corrections department officer, or parole officer supervising the person by not later than the seventh day after the date on which the person is released or the date on which the person leaves a previous residence, as applicable, and provide the officer with the address of the person's temporary residence; and

(2) continue to report to the person's supervising officer not less than weekly during any period of time in which the person has not moved to an intended

4

When reviewing the sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict to decide whether any rational trier of fact could find the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The jury is the sole judge of the credibility and weight to be attached to the testimony of witnesses. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 319)). We presume that the jury resolved any conflicting inferences in favor of the verdict and we defer to that resolution. *Id.*

The evidence admitted at the guilt-innocence phase was sufficient to support the verdict that appellant intended to change his address from his Manor home. He was informed of and had complied with his sex-offender registration and reporting requirements for ten years, including registering when he moved from Austin to Manor. He stopped working by April 9, 2009,

---

residence and provide the officer with the address of the person's temporary residence.

Tex. Code Crim. Proc. art. 62.051(h).

If a person required to register under this chapter intends to change address, regardless of whether the person intends to move to another state, the person shall, not later than the seventh day before the intended change, report in person to the local law enforcement authority designated as the person's primary registration authority by the department and to the juvenile probation officer, community supervision and corrections department officer, or parole officer supervising the person and provide the authority and the officer with the person's anticipated move date and new address. If a person required to register changes address, the person shall, not later than the later of the seventh day after changing the address or the first date the applicable local law enforcement authority by policy allows the person to report, report in person to the local law enforcement authority in the municipality or county in which the person's new residence is located and provide the authority with proof of identity and proof of residence.

Tex. Code Crim. Proc. art. 62.055(a).

discontinued contact with officers monitoring him, failed to comply with his parole curfew hours (which is not a violation of the registration requirement, but is consistent with acting on an intent to change address), and appeared to have rented his house in Manor to someone as of April 14—although the house appeared vacant on April 20. There is no indication that he intended to return to Manor. He was found in a Michigan apartment on May 8, albeit without evidence he was living in that or any other apartment. When his vehicle was reported abandoned in Michigan on May 20, it contained pillows, notebooks, stacks of papers, a photo, newspapers, and a cup, giving the impression he had been living in it. Appellant had left the keys with the landowner, who told Michigan police that the vehicle had been on his property for more than a month. Viewed most favorably to the verdict, this record contains sufficient evidence on which a rational jury could find beyond a reasonable doubt that appellant intended to change his address and failed to provide the new address to the proper authorities and also that appellant failed to apprise the proper authorities of his temporary address pending his move to an intended address.

**The jury instruction was not erroneous and did not cause egregious harm**

Appellant contends that the trial court erred by instructing the jury that it could convict him for failing to comply with sex-offender registration requirements without agreeing unanimously on the particular provision he violated. The trial court instructed the jury that it could convict him of failure to register if it found that he failed (1) to report in advance an intended change of address, along with the date of the move and the address, or (2) to report to his supervising officer while any move was pending and failed to provide the officer with the address of his interim

6

residence.[2]  *See* Tex. Code Crim. Proc. arts. 62.051(h), .055(a).  Although the trial court instructed the jury that its verdict must be unanimous, it did not instruct the jurors that they must agree unanimously that appellant violated a particular registration requirement.  Appellant argues that this was error because the court of criminal appeals has held that the ways of failing to register that are in separate statutes are different offenses for purposes of the court's instructions to the jury.  *See Young v. State*, 341 S.W.3d 417, 425 (Tex. Crim. App. 2011).  Otherwise, the defendant could be convicted for failing to register without a unanimous verdict regarding the violation of any particular statute, which appellant urges is unconstitutional.  *See id.*; *see also* Tex. Const. art. V, § 13.

---

[2]  The application paragraph of the trial court's charge provided as follows:

> Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt that on or about the 15th day of April, 2009, in the County of Travis, and State of Texas, the defendant, Clifford Bart Dunbar, being required to register under the sex offender registration program for receiving a reportable conviction for aggravated rape with a deadly weapon in Cause No. 6572, on the 13th day of July, 1983, in the 118th District Court of Howard County, Texas, intentionally or knowingly failed to comply with a requirement of law, namely, failed to report an intended change of address within seven days before the change to local law enforcement authority with whom Clifford Bart Dunbar last registered and to the parole officer supervising Clifford Bart Dunbar and provide the authority and the officer with anticipated move date and address of the said Clifford Bart Dunbar, or that said Clifford Bart Dunbar failed to continue to report to his supervising officer in the required time period of not less than weekly during any period of time in which Clifford Bart Dunbar had not moved to an intended residence and failed to provide the officer with the address of his temporary residence, you will find the defendant guilty of the offense of failure to comply with sex offender registration requirements and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the defendant of the offense of failure to comply with sex offender registration requirements.

Because appellant did not object to the jury charge on this ground,[3] we can reverse only if any error was fundamental and caused egregious harm by depriving appellant of a fair and impartial trial. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g).

The trial court's instruction was not erroneous. The legislature created a single crime—failure to comply with registration requirements, Tex. Code Crim. Proc. art. 62.102(a)—and numerous registration requirements. *See Young*, 341 S.W.3d at 425 (listing various requirements). In *Young*, the court of criminal appeals held that, although the provision relating to an intended move has two parts—reporting the anticipated move and reporting the completed move, Tex. Code Crim. Proc. art. 62.055(a)—the legal duty is a single responsibility to report a move. *Young*, 341 S.W.3d at 427. The jurors need only agree unanimously that the offender failed to comply with one or the other requirement, not on which particular aspect of the reporting requirement he violated. *Id.* Although the requirement to report when an intended move is delayed is in a separate statute, *see* Tex. Code Crim. Proc. art. 62.051(h), it seems naturally part of the requirement to report a move—report that the move is intended, report that it is completed, or report that it did not occur and where the offender will live in the interim. All three are ways in which an offender can violate his duty to report his residence status as it is affected by an intended move and, therefore, they constitute alternate means of committing the same offense. As the *Young* court wrote with respect to the provisions of article 62.055(a), "The jury must unanimously agree that the defendant violated

---

[3] Although the parties and trial court discussed how the issues should be charged to require unanimity, appellant did not object to the instruction given when the trial court announced its conclusion that a disjunctive instruction was authorized. Appellant argues that the discussion preserved error, while the State contends that appellant's attorney agreed that the court's charge was correct. This type of disagreement is a chief reason that the rules require an objection to preserve error and why we believe one was required here. *See* Tex. R. App. P. 33.1.

8

the statutory duty, but need not be unanimous concerning the specific manner and means of the violation." *Young*, 341 S.W.3d at 427. The trial court did not err by submitting this instruction.

In the alternative, any error in the instruction did not inflict egregious harm because of the nature of the case. When assaying harm, we examine: 1) the entire jury charge; 2) the state of the evidence, including contested evidence and the weight of probative evidence; 3) the arguments of counsel; and 4) any other relevant information in the record to determine whether appellant suffered egregious harm. *Id*. Egregious harm may occur in a variety of circumstances—e.g., if the error affected the very basis of the case, undermined a defensive theory, made a conviction significantly more likely, or deprived the defendant of a valuable right. *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011). The contested issue in this case—common to the statutes appellant is charged with violating—is whether appellant intended to move. *See* Tex. Code Crim. Proc. arts. 62.051(h), .055(a). Appellant contends that there is no evidence that he intended to move and, thus, that these reporting statutes did not apply to him. The State contends that there is evidence that he intended to move and failed to provide the requisite notice.[4] The dispute over intent, however, does not create a possibility in which the jury's verdict would be non-unanimous on any particular means of commission of the offense because appellant undisputedly did not provide any notice required by articles 62.051 and 62.055. Either appellant intended to change his address

---

[4] The evidence is undisputed that appellant utterly failed to report anything related to an intended or completed move to Michigan or anywhere else. He did not give notice of an intended move, notice that he had moved, or notice that a planned move was on hold and that he had an interim address. The only evidence is that appellant was last seen in the Austin area on April 8, that he was arrested in Michigan on May 8, and that, on May 20, his car—which contained his belongings and looked as if someone had been living in it—was reported abandoned nearby in Michigan and as having been in that location for at least a month.

9

and committed the violations alleged—which is sufficient to support the judgment whether the theories were submitted conjunctively or disjunctively—or he did not intend to change his address, the reporting requirements do not apply, and he is not guilty of the charged offenses.[5] The jury found him guilty, so it necessarily found that he intended to change his address and we have affirmed that verdict. We note that this must mean that the jury unanimously found that he violated article 62.055(a) because his duty to report under article 62.051(h) did not arise unless he first intended to move and then did not. Put another way, no reasonable juror could have found from the evidence presented that appellant failed to report an interim address pending an incomplete move under article 62.051(h) without first finding that he intended to move, in which case the juror must have found a violation of 62.055(a) based on the evidence presented that appellant provided no notice of an intended move. Because the jury necessarily unanimously found a violation of article 62.055(a), any error in the instruction did not affect the basis of either party's case, undermine a defensive theory, make a conviction more likely, or deprive appellant of a valuable right.

We conclude that the trial court did not err by giving the challenged instruction or, if it did err, the error asserted did not cause appellant egregious harm.

**Appellant's counsel did not render ineffective assistance**

An appellant alleging ineffective assistance of counsel must show by a preponderance of the evidence that (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms and (2) the deficient performance prejudiced the defense.

---

[5] Whether appellant might then be guilty of other theories of failure to report is beyond the scope of this opinion.

*Strickland v. Washington*, 466 U.S. 668 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005). Ineffective-assistance claims turn on the facts and circumstances of each particular case, *Johnson v. State*, 691 S.W.2d 619, 626 (Tex. Crim. App. 1984), and must be firmly founded in the record. *Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002). An accused is not entitled to entirely errorless representation, and we look to the totality of the representation in gauging the adequacy of counsel's performance. *Frangias v. State*, 392 S.W.3d 642, 653 (Tex. Crim. App. 2013). The review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within a wide range of reasonable professional assistance. *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). The record on direct appeal will only rarely be adequate to show that counsel's performance fell below an objectively reasonable standard of performance. *See Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). When the record is silent as to trial counsel's strategy, we will not conclude that appellant received ineffective assistance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). Counsel should ordinarily have the opportunity to explain the reason for litigation decisions, and the trial record rarely contains sufficient information to permit a reviewing court to fairly evaluate the merits of the serious assertion that counsel was ineffective and harmed the defendant. *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Appellant contends that his trial counsel provided ineffective assistance by failing to object to testimony appellant contends was inadmissible. He complains about the failure to object to the admission of the following evidence germane to his theory that he had not actually moved his residence:

11

(1) Sex offender registrar Bonnie Harris testified that she believed that appellant had left his employment. She based her opinion on her review of an email by a sheriff's deputy who was investigating appellant's whereabouts. Appellant contends that Harris's testimony was hearsay because the underlying email was hearsay.

(2) When the court sustained counsel's objection to Harris's testimony that she "knew" appellant had vacated his residence, counsel did not request an instruction that the jury disregard the objected-to testimony.

(3) After counsel objected to hearsay regarding information that Travis County Deputy Lawson obtained from appellant's wife, counsel did not object to Deputy Lawson's testimony that he advised her to "file a missing person's report" on appellant. He contends that Lawson's testimony was indirect hearsay.

(4) Counsel did not object to a statement made by appellant's parole office Heather McKenzie that she thought a renter lived at appellant's residence as of April 20. Appellant contends that McKenzie's opinion was based on information from a third party and therefore was inadmissible hearsay.

(5) Counsel did not object to testimony by Michigan State Trooper Zachary Sparks that appellant's vehicle had been abandoned for up to a month and a half on property in Ravenna, Michigan. Appellant contends that this testimony was based on the property owner's complaint and was therefore hearsay and a violation of his constitutional right to confront witnesses against him.

Many of the allegedly deficient actions relate to the admission of hearsay or statements based on hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tex. R. Evid. 801(d). Witnesses are generally allowed to explain that an out-of-court statement caused the witness to take a particular action so long as the testimony does not strongly imply the content of the out-of-court statement. *See Head v. State*, 4 S.W.3d 258, 261 (Tex. Crim. App. 1999); *Schaffer v. State*, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989). For example, a police officer can testify that information received about possible illegal drug sales caused the officer to investigate the situation described, but more specific statements about

12

the defendant's involvement can be excluded. *See Poindexter v. State*, 153 S.W.3d 402, 408 n.21 (Tex. Crim. App. 2005). If the officer's conduct is called into question, however, the court may allow the officer to reveal the specific information conveyed by the out-of-court declarant so that the jury may assess issues like whether the officer had probable cause to arrest or search a particular person. *See id.* (citing *Schaffer*, 777 S.W.2d at 115 n.4).

We will consider together counsel's reaction to the first three passages concerning testimony from registrar Harris and Deputy Lawson. The effect of any failure to object to Harris's conclusions regarding appellant's employment and any indirect revelation of the content of a Travis County deputy's email on that subject was nullified by the testimony of the janitorial service contractor Kevin Wyrick. He testified that appellant failed to show up for work, failed to answer his telephone, and failed to respond to the contractor's messages, and that the contractor did not find him when he checked with area hospitals and jails. Wyrick's testimony rendered harmless any effect of any misstep in counsel's decision not to object to Harris's testimony regarding appellant's employment status. *See Rogers v. State*, 853 S.W.2d 29, 35 (Tex. Crim. App. 1993). Similarly, counsel's failure to ask the court to instruct the jury to disregard Harris's testimony that she "knew" that appellant had moved from his home was harmless in light of the testimony of several other witnesses that appellant was sought and not found via phone or at his home—even during the hours his parole terms required him to be there. Lawson's testimony that he advised appellant's wife to file a missing person's report revealed nothing more than did other testimony about appellant's apparent disappearance, such as Wyrick's testimony that he reported appellant as missing to the Travis County Sheriff's Department. With regard to each of these situations, we do not know why

13

appellant's counsel acted as she did, but the result of her inaction was negligible in light of other evidence admitted, and we cannot say that her actions were outrageous and incompetent.

Appellant's attorney performed adequately by not objecting to hearsay in parole officer McKenzie's statement about a renter staying in appellant's home because her testimony did not indicate a hearsay source. On appeal, appellant asserts without reference to the record that "[h]er knowledge of the status of any individuals' present was based on information conveyed to her by a third party." McKenzie testified that she had been to appellant's home at least twelve times previously, did not find him or his vehicle there on April 14 during his curfew hours, and did find an unfamiliar vehicle in the driveway. She stated that, when she returned on April 20 with a Fugitive Task Force, it appeared that a renter might be living in the home. On the record before us, McKenzie's statement appears to be based on her personal observations. Appellant's counsel did not act deficiently by choosing not to object to McKenzie's opinion as indirect hearsay.

Appellant contends finally that his trial counsel was deficient for failing to object to Michigan State Trooper Sparks's testimony that he was told that appellant's vehicle had been on Archie Dempsey's property for more than a month. Appellant contends that the statement about the duration of the vehicle abandonment was hearsay and testimonial and, therefore, that its repetition by Sparks in court violated appellant's right to confront witnesses against him. This passage from Sparks's testimony occurred early in his recitation of his response to the report of the abandoned vehicle and contains the sort of information that provides context for his response. The statement about the duration of the vehicle's stay was not directly solicited and may have been offered for a purpose other than the truth of the matter asserted—rendering it not hearsay under the definition. *See* Tex. R. Evid. 801(d). Trial counsel may have chosen not to object to the statement

14

of duration in order to avoid drawing attention to it. Defense counsel also elicited testimony on cross-examination of Sparks that any information about the vehicle he received before he went to Dempsey's property—including, implicitly, the duration of the vehicle's stay—came from a source other than direct conversation with Dempsey. Appellant has not shown that his trial counsel's failure to object to Sparks's testimony was deficient performance.

Further, we conclude that these alleged missteps by defense counsel did not render her overall performance deficient. She participated in pretrial hearings including voir dire, successfully objected to testimony, cross-examined witnesses, and argued strongly that the State had not proved that appellant intended to move, and therefore had not proved that he failed to comply with requirements that he report the progress of his intended move. She highlighted the absence of evidence that appellant discussed moving to a new place and of evidence that he did move, such as utility bills, an apartment lease, or storage fees. She argued that his failure to return the registrar's calls did not show violation of the requirement that he report on any intended move and that his absence from his Manor home when various authorities checked on him did not show that he had moved or intended to move. She noted that the only evidence that he personally was in Michigan any particular day was his arrest on May 8, and still there was no evidence that he intended to move there. She noted the fact that the landowner who reported the vehicle abandoned had the keys and could have placed the pillows in the vehicle. She also noted there was no evidence that appellant had intended to move or had moved to the location where his vehicle was found. The jury's decision to make reasonable inferences to fill the alleged gaps in the evidence does not demonstrate that appellant's counsel was ineffective. It shows only that the jury found, among other things, that

15

appellant intended to change his address and failed to report that intention, accomplishment, or a deviation from the intention as required.

Appellant has not shown that his counsel provided ineffective assistance or that any deficiency in her performance prejudiced his defense. As discussed above, appellant undisputedly did not report anything relating to an intended, thwarted, or accomplished change of address to any relevant authority, and the jury was well within its province from the evidence admitted to infer that he intended to change his address.

## CONCLUSION

We affirm the judgment of conviction.

_____

Jeff Rose, Justice

Before Justices Puryear, Pemberton, and Rose

Affirmed

Filed: June 13, 2014

Do Not Publish